**IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS EASTERN DIVISION**

| | | |
|---|---|---|
| DWAYNE DONTE THOMAS,<br><br>Plaintiff,<br><br>v.<br><br>THOMAS DART, not Individually, but in his official capacity as Sheriff of COOK COUNTY,<br><br>Defendant. | ) | Case No. 25 C 12396<br><br>Judge Joan H. Lefkow |

## OPINION AND ORDER

Dwayne Donte Thomas brings this suit against Cook County Sheriff Thomas Dart, in his official capacity, under both 42 U.S.C. § 1983 and Illinois law for conditions and treatment Thomas experienced as an inmate of Cook County Jail. Thomas raises constitutional violations of the Eighth Amendment as well as common law claims of negligence, premises liability, willful and wanton conduct, and failure to render medical aid. Dart moves to dismiss all claims under Federal Rule of Civil Procedure 12(b)(6) and 735 Illinois Compiled Statutes 5/2-619(a)(9). (Dkt. 15.) For the reasons set forth below, the court grants the motion to dismiss.[1]

## BACKGROUND

On or about June 8, 2024, Thomas fell while entering the community dayroom of the Cook County Jail and sustained an injury to the area of his head and neck. He slipped on pooled water from a leak in the jail's ceiling. Ceiling leaks and resulting pooled water and mold buildup

[1] The case was filed on March 21, 2025, and removed from the Circuit Court of Cook County on October 11, 2025. The pending motion to dismiss is directed at the Second Amended Complaint, referred to within as SAC.

are not uncommon and are the subject of many inmate grievances. Numerous inmates reportedly got sick from the ceiling leaks and buildup of mold. Thomas alleges the custom and practice of the Cook County Jail was to ask the inmates if they needed a mop and bucket and to advise the inmates the leaks would be fixed but ignore the leaks. Consultants were hired to examine the leaks, but the leaks were never fixed.

After his fall, Thomas experienced tingling in his limbs and unsteadiness, which caused additional falls. He reported his injuries to deputy sheriffs at the jail on multiple occasions. Jail employees, who observed that Thomas needed medical care, gave him a cane, led him back to his cell, and advised him that his condition could get worse. Jail employees did not take Thomas for medical treatment.

At some point after sustaining his initial injury, Thomas was put on a bus to the Illinois Department of Corrections prison known as Stateville.[2] During transport, he suffered a seizure but was not given medical aid. Thomas did not receive medical care until he was taken to the hospital on or about July 29, 2024. It is unclear how soon after his seizure he was taken to the hospital, but it was not immediately. The hospital informed Thomas that he needed emergency surgery on his neck due to his fall. After surgery, Thomas stayed in the hospital's care for a month.

## **LEGAL STANDARD**

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) "tests whether the complaint states a claim on which relief may be granted." *Richards* v. *Mitcheff*, 696 F.3d 635, 637 (7th Cir. 2012). Rule 12(b)(6) evaluates the legal sufficiency of a complaint. To survive this challenge, a complaint must contain enough factual detail to establish that the requested relief is

[2] The Second Amended Complaint references "Statesville Prison." (Dkt. 11 ¶¶ 41–44, 85.) The court assumes Thomas intended to reference Stateville Correctional Center.

plausible on its face and that the claims for relief are more than speculative. *Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 555 (2007). When making this determination, the court construes the complaint in the light most favorable to the plaintiff. *Tamayo* v. *Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008) (citations omitted). The court accepts all well-pleaded facts as true, and reasonable inferences are drawn in the plaintiff's favor. *Roberts v. City of Chicago*, 817 F.3d 561, 564 (7th Cir. 2016) (citation omitted).

## ANALYSIS

The court begins with analyzing Thomas's Eighth Amendment Claims in Counts V-VII.

### I. Eighth Amendment Claims

Thomas brings claims of Eighth Amendment violations against Dart, in his official capacity, under 42 U.S.C. § 1983. Counts V, VI, and VII allege that Dart violated Thomas's Eighth Amendment rights by not addressing hazardous jail conditions, by maintaining a custom and practice of ignoring inmate complaints about those conditions, and by failing to render medical aid.

The Eighth Amendment protects individuals from "cruel and unusual punishments." U.S. Const. amend. VIII. That protection imposes a duty on prison officials to "provide humane conditions of confinement." *Farmer* v. *Brennan*, 511 U.S. 825, 832 (1994) (citations omitted). The burden on inmates to demonstrate that officials violated the Eighth Amendment "is a heavy one." *Pyles* v. *Fahim*, 771 F.3d 403, 408–09 (7th Cir. 2014). To find a constitutional violation, the deprivation alleged must be, objectively, "sufficiently serious," and the "prison official must have a 'sufficiently culpable state of mind' … one of 'deliberate indifference' to inmate health or safety." *Farmer*, 511 U.S. at 834 (quoting *Wilson* v. *Seiter,* 501 U.S. 294, 297–98, 302–03 (1991)). A deprivation is sufficiently serious if it denies an inmate "the minimal civilized

measure of life's necessities." *Gills* v. *Hamilton*, 164 F.4th 640, 645 (7th Cir. 2026). An official acts with deliberate indifference when "he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Farmer*, 511 U.S. at 847.

By naming Dart as a defendant only in his official capacity, Thomas asserts a theory of municipal liability against the sheriff's office under 42 U.S.C. § 1983.[3] Under Section 1983, a municipality is not liable for injuries "inflicted solely by its employees or agents," *i.e.*, there is no *respondeat superior* liability. *Monell* v. *Dep't of Soc. Servs. of Cty. of New York*, 436 U.S. 658, 691, 694 (1978). Instead, *Monell* establishes municipal liability when the "execution of a [municipality's] policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the [municipality] as an entity is responsible under 1983." *Id.*

Municipal liability can be found "if the unconstitutional act complained of is caused by (1) an official policy adopted and promulgated by its officers; (2) a governmental practice or custom that, although not officially authorized, is widespread and well settled; or (3) an official with final policy-making authority."[4] *Thomas* v. *Cook Cnty. Sheriff's Dep't*, 604 F.3d 293, 303 (7th Cir. 2010) (citing *Monell,* 436 U.S. at 690). These official actions must be done with deliberate indifference to known or obvious consequences. *Id.* Additionally, to prevent a claim from "backsliding" into *respondeat superior* liability, the alleged action must not only be the

[3] A county sheriff's office is a municipal entity amenable to suit under Section 1983. *See Jones* v. *Lake Cnty. Sheriff's Off.*, 154 F.4th 538, 544 (7th Cir. 2025) ("In Illinois, a county's sheriff's office is a municipal entity and is, thus, amenable to suit under § 1983."); *see also Mortensen* v. *Arrowood*, 711 F. Supp. 3d 935, 938 (N.D. Ill. 2024) ("Plaintiff may … add a § 1983 claim against the Lake County Sheriff in his official capacity (which is another way of saying against the office of the Sheriff …).").

[4] In Illinois, the official with final policy-making authority over jail operations is the sheriff. *DeGenova* v. *Sheriff of DuPage County*, 209 F.3d 973, 976 (7th Cir. 2000).

cause of the constitutional violation but must be the "moving force" behind it. *Bohanon* v. *City of Indianapolis*, 46 F.4th 669, 675–76 (7th Cir. 2022). Plaintiffs are required to show a "direct causal link" between the challenged municipal action and the constitutional violation. *Id*. (quoting *First Midwest Bank Guardian of Est. of LaPorta* v. *City of Chicago*, 988 F.3d 978, 987 (7th Cir. 2021)).

Therefore, for Thomas to maintain his Eighth Amendment *Monell* claims against Dart, he must allege that a municipal policy, custom, or practice enacted or put into practice with deliberate indifference to its obvious consequences was the moving force behind a sufficiently serious constitutional deprivation.

**A. Hazardous Condition of Confinement**

In Count V, Thomas alleges that the accumulation of water in the jail's dayroom posed a hazard to inmates that rose to the level of a constitutional violation. Thomas attributes the standing water to the jail's widespread custom and practice of ignoring inmate grievances, particularly grievances about leaks in the ceiling.

The initial inquiry is whether Thomas has pleaded a "sufficiently serious" deprivation. Dart cites *Pyles* v. *Fahim* to support his proposition that slippery floors cannot constitute a violation under the Eighth Amendment. 771 F.3d 403, 410 (7th Cir. 2014). In *Pyles,* the plaintiff slipped on stairs that "were unavoidably wet" since "the water on inmates' shower shoes inevitably tracked onto the exit stairway." *Anderson* v. *Morrison*, 835 F.3d 681, 683 (7th Cir. 2016) (discussing *Pyles*). The court stated that "slippery surfaces and shower floors in prisons, *without more*, cannot constitute a hazardous condition of confinement." *Pyles*, 771 F.3d at 410 (emphasis added). *Pyles*, however, is not the sweeping preclusion of slip-and-fall claims that

Dart asserts it to be, as it leaves open the possibility of slippery surfaces constituting Eighth Amendment violations when combined with additional hazardous conditions.

Indeed, the Seventh Circuit in *Anderson* ruled that slippery surfaces, in combination with other factors, can be sufficient to state an Eighth Amendment violation. There, the Seventh Circuit found that stairs so "slicked with milk and cluttered with garbage" that it created an "obstacle course" for a handcuffed inmate to navigate while the guards refused to assist him was sufficient to state an Eighth Amendment claim. 835 F.3d at 683. The court distinguished these facts from other shower-related slip-and-fall cases by explaining this slippery floor was "*not* a necessary condition of prison," and the associated risk of "plummeting down a flight of 13 steps" is a far greater danger than slipping on a shower floor. *Anderson*, 835 F.3d at 683 (emphasis in original). In another example, the Seventh Circuit found a "wet, uneven kitchen floor" in combination with the plaintiff's "carrying scalding water in a bucket over that floor," could give rise to an Eighth Amendment violation. *Balle* v. *Kennedy*, 73 F.4th 545, 554–555 (7th Cir. 2023) (reversing summary judgment for defendant).

Thus, in certain circumstances, a slippery floor can be a condition of confinement that violates the Eighth Amendment, but the allegations here are insufficient. The accumulation of water in the jail's dayroom, and the risk it posed, is more analogous to a shower floor, as contemplated by *Pyles*, than the stairway in *Anderson*—though neither is a perfect comparison. The floor of the dayroom was not "inevitably" slippery; dayrooms, unlike showers, are not by their nature understood to contain wet surfaces, but neither does pooled water on the floor from an ongoing leak in the ceiling amount to an "obstacle course" that prisoners were forced to navigate while handcuffed, imposing the risk of falling down a flight of stairs. *See Anderson*, 835 F.3d at 683. Thomas also does not allege other contributing conditions that would bring the

situation closer to *Anderson* or *Balle*. For example, Thomas does not allege that he was unaware of the standing water in the dayroom or that there were any physical or visual impairments that prevented him from mitigating the risk of falling. The complaint is also opaque as to the size and duration of the condition and whether any obstacles necessitated his walking through the pooled water. Thus, Thomas's allegations under Count V are not sufficient to state a claim under the Eighth Amendment.

The motion to dismiss as to Count V is granted.

**B. Ignoring Inmate Grievances**

In Count VI, Thomas alleges that Dart maintained a widespread custom and practice of ignoring inmate grievances about ceiling and roof leaks and dangerous amounts of water on the floor, and that in doing so, Dart violated Thomas's Eighth Amendment rights by causing him to slip and fall in the accumulated water.[5]

To state a *Monell* claim, Thomas must allege that an express policy, a widespread practice, or the action of a person with final policy-making authority was the moving force behind a constitutional injury. Here, Thomas makes allegations regarding a policy or widespread practice but does not connect it to a constitutional injury or allege that it was the moving force behind any such injury.

As established above, the standing water as alleged is not an Eighth Amendment violation. The sparse allegations of a general buildup of mold in the jail that caused "numerous"

---

[5] In his response to Dart's motion to dismiss, Thomas makes a passing attempt to argue the existence of a conspiracy between the Sheriff and his deputies to subject the inmates to cruel and unusual punishment. When defending against a motion to dismiss, plaintiffs are permitted to allege additional facts that are consistent with the complaint for the purpose of showing the existence of a state of facts within the scope of the complaint that would entitle him to judgment, if proven. *Early* v. *Bankers Life & Cas. Co.*, 959 F.2d 75, 79 (7th Cir. 1992); *see Geinosky* v. *City of Chicago*, 675 F.3d 743, 745 n.1 (7th Cir. 2012). Here, Thomas's attempted argument merely states a legal conclusion and does not add any additional facts. Even if he did allege additional facts related to this new conspiracy allegation, asserting a new legal theory would not be consistent with the SAC. Therefore, the court will not consider this conspiracy allegation for the purpose of the motion to dismiss.

unidentified inmates to get sick with unidentified illnesses does not state a constitutional injury to Thomas. Further, ignoring inmate grievances is not itself an Eighth Amendment violation because "the Constitution does not obligate prisons to provide a grievance process, nor does the existence of a grievance process itself create a protected interest." *Montanez* v. *Feinerman*, 439 F. App'x 545, 547 (7th Cir. 2011) (citing *Owens* v. *Hinsley*, 635 F.3d 950, 953–54 (7th Cir. 2011); *Grieveson* v. *Anderson*, 538 F.3d 763, 772–73 (7th Cir. 2008)). Therefore, whether the practice of ignoring grievances regarding the ceiling and roof leaks is widespread is of no moment; there can be no *Monell* liability without an underlying constitutional violation. *See King ex rel. King* v. *E. St. Louis Sch. Dist. 189*, 496 F.3d 812, 817 (7th Cir. 2007).

The motion to dismiss as to Count VI is granted.

**C. Failure to Render Medical Aid**

In Count VII, Thomas claims an Eighth Amendment violation in Dart's failure to provide medical care after his fall. Dart correctly points out that Thomas does not allege that an express policy, a widespread practice, or the action of a person with final policy-making authority was the moving force behind Thomas's injury. Nor does he allege facts that would support the inference that such a policy or practice existed. As such, any official capacity claim fails, and the court must assume Thomas did not intend to claim one.

On the other hand, the allegations set out above may be sufficient to state an individual capacity claim against unnamed officials who did not send Thomas for medical care in response to the fall once they observed the need. *See Boyce* v. *Fairman*, 24 F. Supp. 2d 880, 885 (N.D. Ill. 1998) ("Plaintiff must prove two elements in order to successfully advance his individual capacity claims under 42 U.S.C. § 1983: (1) that the defendants were acting under color of state law; and (2) that the conduct of the defendants deprived the plaintiff of a federal right." (citing

*Parratt v. Taylor,* 451 U.S. 527 (1981)). If this was Thomas's intention, he may amend the complaint accordingly, but an amended complaint must name the employees responsible for his injury in their individual capacities. *See Monell*, 436 U.S. at 692 ("Congress did not intend [a local government] to be held liable … solely because it employs a tort-feasor[.]")[6]

**II. State Law Claims**

The court has dismissed Thomas's federal claims. Accordingly, his state law claims will be dismissed for lack of supplemental jurisdiction. *See Dietchweiler by Dietchweiler* v. *Lucas*, 827 F.3d 622, 631 (7th Cir. 2016) ("[W]hen the federal claims are dismissed before trial, there is a presumption that the court will relinquish jurisdiction over any remaining state law claims."). The court dismisses Counts I, II, III, and IV without prejudice to repleading should Thomas file a third amended complaint or file his common law claims in an Illinois court.

**<u>CONCLUSION AND ORDER</u>**

For the foregoing reasons, Dart's motion to dismiss Thomas's Second Amended Complaint is granted, and Thomas's claims are dismissed without prejudice. Thomas has until October 8, 2026, to file an amended complaint that is consistent with this opinion. If he elects not to do so, the dismissal without prejudice will be converted to dismissal with prejudice on October 9, 2026. A status hearing is set for October 14, 2026 at 9:30 a.m. in person in courtroom 2201.

Date: September 24, 2026

Joan H. Lefkow
U.S. District Judge Joan H. Lefkow

---

[6] If Thomas does not know the names of those individuals, he may refer to the unknown individuals as John or Jane Does and name a supervisory official, such as the sheriff, who can assist with identifying the individuals. Thomas's counsel is likely aware that the statute of limitations continues to run for those individuals until they are named in an amended complaint. *Herrera* v. *Cleveland*, 8 F.4th 493 (7th Cir. 2021).